UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER E. WEBSTER | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Case No. 12-CV-2173 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION**

This case is before the court on the pro se Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (#1) filed by Petitioner, Christopher E. Webster. After careful consideration of Petitioner's Motion (#1) and Memorandum (#2), the Government's Response (#4) and Petitioner's Reply (#6), Petitioner's Motion (#1) is DENIED.

FACTS

PROCEEDINGS IN CRIMINAL CASE

On September 10, 2008, a federal grand jury charged Petitioner in Case No. 08-CR-20044 with possession with the intent to distribute fifty or more grams of cocaine base "crack" in Count One; and, in Count Two, with possession with the intent to distribute five or more grams of cocaine base "crack."

After his indictment, Petitioner filed a motion to suppress the evidence found in his vehicle. An evidentiary hearing was held on July 22, 2009. The evidence presented at the hearing showed that, on August 14, 2008, Troy Wasson and other Danville police officers saw Petitioner sell cocaine to a confidential informant. Later that day, Wasson went before a Vermillion County judge and obtained a warrant to search Petitioner's residence

for cocaine and other drug paraphernalia. The next day, the officers went to Petitioner's residence with the search warrant. Petitioner was driving up in his Escalade when Wasson pulled in behind him, blocking his path out of the driveway. Petitioner was put in handcuffs and informed that they possessed a warrant to search his residence. The agents who searched the house found approximately 20.8 grams (with packaging) of crack cocaine packaged for sale in individual baggie corners, placed inside a shoebox in the kitchen. Steven Guess, another officer, then asked for permission from Petitioner to search his vehicle. Although neither officer could recall Petitioner's exact response, Guess later testified that Petitioner gave immediate consent to the search of his vehicle. This search yielded approximately 112 grams (with packaging) of crack cocaine placed inside the center console of the vehicle. The vehicle was registered to Petitioner. The search of Petitioner's vehicle resulted in the majority of the crack cocaine recovered in the search.

  Petitioner argued that: (1) the search warrant was not supported by probable cause; (2) because the warrant was invalid, his detention during the search was illegal; and (3) the illegal detention, combined with the fact that he was not given his Miranda warnings, rendered his consent invalid. This court entered a written opinion and found that the warrant was supported by probable cause, that the detention of Petitioner was justified in order to secure the officers' safety, and that the Miranda warning was unnecessary because a request for consent to search is unlikely to elicit an incriminating response, citing United States v. Bustamante, 493 F.3d 879, 892 (7th Cir. 2007).  This court also credited Guess's testimony that Petitioner did in fact, consent to the search of his vehicle.

Petitioner subsequently entered into a written plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Petitioner signed the plea agreement on March 22, 2010. In the plea agreement, Petitioner agreed to plead guilty to Count One and the Government agreed to dismiss Count Two at sentencing. The parties agreed that the potential penalties for Count One based on Petitioner's prior felony drug conviction, for which notice had previously been given pursuant to 21 U.S.C. § 851, was a mandatory minimum 20 years to a maximum of life imprisonment. The parties agreed that the appropriate sentence in this case was the mandatory minimum of 240 months. Additionally, Petitioner waived his right under 18 U.S.C. §3742 to appeal the conviction and sentence. Petitioner did retain the ability, however, to appeal this court's decision denying his motion to suppress evidence. The plea agreement also included the following:

<u>WAIVER OF RIGHT TO COLLATERAL ATTACK</u>

> 19. The defendant also understand that he has a right to attack his sentence collaterally on the grounds it was imposed in violation of the Constitution or laws of the United States, he received ineffective assistance from his attorneys, this Court was without proper jurisdiction or the sentence was otherwise subject to collateral attack. The defendant understands such an attack is usually brought through a motion pursuant to Title 28, United States Code, Section 2255. The defendant and his attorney have reviewed Section 2255, and the defendant understands the rights that statute

gives him. The defendant's attorney has fully discussed and explained this waiver with the defendant. The defendant specifically acknowledges that the decision to waive the right to challenge any later claim of the ineffectiveness of the defendant's counsel was made by the defendant alone notwithstanding any advice the defendant may or may not have received from the defendant's attorney regarding this right.

20. Regardless of any advice his attorney has given him one way or the other, in exchange for the concessions made by the United States in this Plea Agreement, specifically to receive the mandatory minimum sentence of 240 months, the defendant hereby knowingly and voluntarily waives his right to challenge any and all issues relating to his plea agreement, conviction and sentence, including any fine or restitution, in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255. The defendant acknowledges and agrees that the effect of this waiver is to completely waive any and all rights and ability to appeal or collaterally attack any issues relating to his conviction and to his sentence so long as the

sentence is within the maximum provided in the statues of conviction.

### ACKNOWLEDGEMENT OF VOLUNTARINESS OF WAIVER

21. The defendant states that he has not been coerced, threatened, intimidated, or in any other way involuntarily persuaded to waive his rights to appeal or collaterally attack his sentence by his attorney or anyone else. The defendant is waiving those rights because he <u>personally</u> believes it is in his best interest to do so in order to obtain the benefit of the concessions made by the United States in this agreement. The defendant understands the United States is unwilling to make some of those concessions unless he is willing to waive his rights to appeal or collaterally attack his sentence as part of the bargain. The defendant asks the Court to accept this waiver so he can receive the full benefit of this agreement.

. . .

26. Defendant

I have read this entire Plea Agreement carefully and have discussed it fully with my attorney. I fully understand this agreement and accept and agree to it without reservation, including the paragraphs labeled "Waiver of Right to Appeal" and "Waiver of Right to Collateral Attack."

I am entering into this agreement voluntarily and of my own free will in order to gain the benefit of the promises made by the United States. I am pleading guilty because I am in fact guilty, and I agree that the facts stated in this agreement about my criminal conduct are true. No threats, promises, or commitments have been made to me or to anyone else, and no agreements have been reached, express or implied, to influence me to plead guilty other than those stated in this written plea agreement nor am I under the influence of anything that could impede my ability to understand fully this Plea Agreement.

I am satisfied with the legal services provided by my attorney in connection with this case, this Plea Agreement and matters related to it. I further understand that by signing below I am stating I agree with everything stated in this section of the Plea Agreement and I am accepting and entering into this Plea Agreement in its entirety.

I hereby reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Plea Agreement.

On March 22, 2010, a change of plea hearing was held before this court. At the hearing, Petitioner was sworn and a Rule 11 colloquy was held. During the colloquy, this court thoroughly explored the issue of Petitioner's competence to enter into the plea agreement. This court also thoroughly advised Petitioner of the rights he was waiving by entering into the plea agreement and carefully discussed the terms of the plea agreement, which Petitioner acknowledged that he had read and understood, including the agreed-upon sentence of 20 years. This court accepted the plea of guilty and the plea agreement.

A sentencing hearing was held on June 23, 2010. At the beginning of the hearing, this court discussed the plea agreement and the fact that the parties had agreed to a sentence of 240 months of imprisonment. During sentencing, this court discussed the presentence report with Petitioner and Petitioner confirmed that he had no objections. This court then sentenced Petitioner to a term of 240 months in the Federal Bureau of Prisons, in accordance with the agreement of the parties. Also pursuant to the terms of the plea agreement, Petitioner was ordered to serve a 10-year term of supervised release and Count Two was dismissed.

Petitioner filed a Notice to Appeal and new counsel was appointed to represent Petitioner on appeal. On April 14, 2011, the Seventh Circuit entered an Order and affirmed this court's ruling on Petitioner's motion to suppress evidence. United States v. Webster, 418 Fed. Appx. 519 (7th Cir. 2011). On appeal, Petitioner also challenged his sentence and argued that he should be resentenced under the Fair Sentencing Act of 2010 (FSA). The Seventh Circuit rejected this argument, finding, among other things, that

Petitioner waived appellate review of sentencing claims in his plea agreement. Webster, 418 Fed. Appx. 519, at *3.

## PROCEEDINGS UNDER SECTION 2255

On June 28, 2012, Petitioner filed his pro se Motion to Vacate, Set Aside, or Correct Sentence (#1) and Memorandum in Support (#2). Petitioner listed eight grounds for relief. On July 27, 2012, the Government filed its Response (#4) and argued that seven of the arguments raised should not be considered by the court due to Petitioner's knowing and intentional waiver of the right to file a motion under §2255. The Government also argued that Petitioner's remaining claim, that he was denied the effective assistance of counsel regarding the negotiation of the plea agreement, had no merit under the applicable standard under Strickland v. Washington, 466 U.S. 668 (1984).

On October 5, 2012, Petitioner filed a Reply (#6). Petitioner essentially conceded that six of his claims cannot be considered because of the waiver included in his written plea agreement. Petitioner asked this court to consider two of his claims, however. He contended that his claim that his counsel was ineffective in negotiating the plea survived the waiver. Petitioner argued that his counsel misrepresented the terms under which he was willing to plead guilty and also misrepresented the terms of the Government's offer. Petitioner also argued that this court should consider his claim that his counsel was ineffective for failing to request a continuance of his sentencing hearing until after the effective date of the FSA. Petitioner attached his affidavit to the Reply. In his affidavit, Petitioner stated that his attorney told him prior to his guilty plea that the Government would withdraw the § 851 notice regarding his prior conviction at the time of sentencing,

but would still recommend a 20-year sentence. Petitioner stated that, at the guilty plea hearing, he asked to speak to his attorney when the court asked him about giving up his right to appeal or file a collateral attack. Petitioner stated that he asked his attorney if the Government would still be dismissing the § 851 at sentencing, and if his sentencing could be continued until after the FSA was enacted. Petitioner stated that his counsel became agitated by his questioning and stated that the court would address the § 851 issue at sentencing and the FSA would be retroactive and apply to his case. Petitioner stated that his counsel told him to say "yes, he understood." Petitioner further stated that he sees now that he did not understand what the term "Collaterally Attack" meant. He stated that the meaning of that term was never explained to him. Petitioner stated that if he had known that his counsel was wrong about him receiving a reduction in his sentence based on the FSA, he would not have agreed to the plea bargain "but would have insisted that it be negotiated into [another] plea agreement."

On June 14, 2013, Petitioner filed an Application for Leave to File Supplemental Legal Authority (#7). Petitioner asked for leave to cite the decision of the Sixth Circuit Court of Appeals in United States v. Blewett, ___F.3d ___, 2013 WL 2121945 (6th Cir. 2013) as additional authority.

## ANALYSIS

After careful review of Petitioner's filings and the Government's arguments, this court agrees with the Government that Petitioner has waived his right to file a Motion under §2255. This court further concludes that the waiver applies to all of Petitioner's

9

claims because his claims of ineffective assistance of counsel do not relate to the negotiation of the waiver and are barred by the waiver.

The Seventh Circuit has stated that it strictly enforces waivers of the right to challenge a sentence included in a plea agreement. See United States v. Cieslowski, 410 F.3d 353, 364 (7th Cir. 2005); see also United States v. Bownes, 405 F.3d 634, 636 (7th Cir. 2005). In the Seventh Circuit, a defendant who, as part of a written plea agreement, expressly waives the right to file a § 2255 motion challenging his sentence may only file such a motion if he can demonstrate that the § 2255 waiver was either unknowing or involuntary or the result of the ineffective assistance of counsel. Mason v. United States, 211 F.3d 1065, 1069 (7th Cir. 2000); Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999); Williams v. United States, 2010 WL 1327442, at *4 (C.D. Ill. 2010). "[T]he right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver." Jones, 167 F.3d at 1145; see also Williams, 2010 WL 1327442, at *4; Reed v. United States, 2005 WL 1528371, at *2 (N.D. Ind. 2005).

In this case, Petitioner has claimed that his counsel was ineffective in negotiating the plea agreement because his counsel told him that the Government would be dismissing the § 851 notice and the FSA was retroactive. He has argued that he would not have agreed to the plea agreement if he had known that the Government would not be dismissing the § 851 notice at sentencing and that the FSA would not apply at sentencing. The problem with these arguments is that the written plea agreement, which Petitioner

acknowledged signing and acknowledged that he had read, clearly and specifically states that the parties agreed to a sentence of 240 months. At the guilty plea hearing, Petitioner took an oath to tell the truth and answered numerous questions regarding the plea agreement. The following questions were asked and the following answers were given by Petitioner:

> Q    Do you understand if I accept this what your sentence is going to be?
>
> A    Yes.
>
> Q    How much?
>
> A    20 years.
>
> Q    Okay. Now, that takes away the trial. So on one hand, right to appeal my [ruling on the] motion to suppress. On the other hand, no trial, sentence of 20 years. That's the deal, right?
>
> A    Yes, sir.
>
> Q    Okay. Now, if you win the motion to suppress, that will end the case, no 20-year sentence. Do you understand that?
>
> A    Yes, I do.

11

Q You lose the motion to suppress: 20-year sentence, end of story, no further appeals. Do you understand that?

A Yes.

Q So that's what you've agreed to, right? No trial, certain sentence, the absolute minimum, 20 years; and if I lose my motion to suppress, I'll take my 20 years and I'll be done, no further appeals, no further complaints. Is that right?

A Yes, sir.

Q Okay. Now has anybody forced you to do this?

A No, sir.

Q Anybody threatened you?

A No, sir.

Q Anybody promised you anything other than what's in this agreement?

A No.

Q So do you understand if the case goes to the Court of Appeals and they say my [ruling on the] motion to

suppress is okay, you can't come back and ask for a trial? Do you understand that? That will be gone.

A   Yes.

Q   You can't come back and ask to appeal what happened today. That will be gone. Do you understand that?

A   Yes.

Q   And then if you're in jail doing a 20-year sentence and somebody comes up to you and says, "You know, I'm the law clerk over at the prison library; and, you know, if you help me out a little bit on my commissary, I'll prepare papers, and we'll go in and we'll set that sentence and agreement aside and find that John Taylor did something wrong, Judge McCuskey did something wrong. Don't worry about the fact you lost in the Court of Appeals on the suppression. You know, you take care of me in the commissary, and I'll take care of you on your paperwork" - - do you understand your answer to the guy should be, "No, I don't have any further appeals. I gave them up as part of the deal. So

13

>   there's nothing you can do to help me?"  Do you understand that?
>
> A   I understand.

Later, this court asked Petitioner to state in his own words what was happening that day. Petitioner stated that he was "taking a plea of 20 years today." This court then again explained that if the Seventh Circuit affirmed the ruling on the motion to suppress, "you will have to do the 20 years; there won't be any further right to appeal or attack that sentence? Do you understand that?" Petitioner responded, "I understand."

Any claim by Petitioner that he did not enter into the plea agreement knowingly, and did not understand the nature and consequences of the plea, is completely belied by the written plea agreement, which was thoroughly discussed during the guilty plea hearing. See Reed, 2005 WL 1528371, at *2-5. Voluntary responses made by a defendant when entering a guilty plea are binding and entitled to a presumption of verity. See United States v. Chapa, 602 F.3d 865, 869 (7th Cir. 2012); United States v. Martinez, 169 F.3d 1049, 1054 (7th Cir. 1999). This court may consider a defendant's signature on the plea agreement and his statements during the plea colloquy as evidence of a knowing and voluntary waiver. United States v. Jackson, 2011 WL 3163172, at *5 (N.D. Ind. 2011), citing United States v. Jemison, 237 F.3d 911, 917 (7th Cir. 2001).

The record in this case shows that the waiver was thoroughly and repeatedly explained to Petitioner and Petitioner freely and voluntarily agreed to it. See Chapa, 602

F.3d at 869. This court concludes that Petitioner is not really claiming that he was denied the effective assistance of counsel as far as the negotiation of the waiver itself, but is rather claiming that he was misinformed by his counsel regarding the terms of the agreement. Any such argument is completely belied by the fact, which Petitioner acknowledged in the written agreement and numerous times during the guilty plea hearing, that he was agreeing to a sentence of 20 years with no ability to challenge anything about the sentence except this court's ruling on the motion to suppress. It did not make any difference whether the Government dismissed the § 851 notice or the FSA was retroactive, Petitioner agreed to a 20-year sentence. In making his ineffective assistance of counsel claim, Petitioner is asking this court to disregard the sworn statements he made at the change of plea hearing that he was agreeing to a sentence of 20 years with no ability to challenge anything except this court's ruling on the motion to suppress. See Jackson, 2011 WL 3163172, at *9. Therefore, Petitioner is not entitled to relief based upon his ineffective assistance claim, a claim which is completely contradicted by his sworn statements in the plea agreement and before this court. See Jackson, 2011 WL 3163172, at *9. This court concludes that Petitioner cannot claim that his waiver was unknowing or involuntary or was the result of ineffective assistance of counsel.

Accordingly, this court concludes that Petitioner's Motion under § 2255 is barred by his waiver. This court notes that the Seventh Circuit has stated that "[w]e have never been reluctant to hold criminal defendants to their promises." Roberts v. United States,

429 F.3d 723, 724 (7th Cir. 2005). Here, as in Roberts, "[t]here is no question that [Petitioner's] waiver encompasses the claims presented in the § 2255 motion." See Roberts, 429 F.3d at 724.

This court notes that Petitioner has filed an Application for Leave to File Supplemental Legal Authority (#7). Petitioner's Application (#7) is GRANTED. Petitioner has cited Blewett in which the Sixth Circuit Court of Appeals held that the FSA must be applied retroactively to defendants sentenced prior to its enactment pursuant to the Equal Protection Clause. However, the Blewett decision has no application in this case. This court must follow Seventh Circuit precedent which holds that the FSA applies only to defendants who were sentenced after August 3, 2010, the effective date of the Act. United States v. Foster, 706 F.3d 887, 888 (7th Cir. 2013); United States v. Robinson, 697 F.3d 443, 444-45 (7th Cir. 2012). Petitioner was sentenced in June 2010 and the FSA does not apply to him based upon the precedent of the Seventh Circuit, which this court must follow.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing §2255 Proceedings, this court denies a certificate of appealability in this case. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," which has happened here, a certificate of appealability should issue only when the prisoner shows both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would

find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (emphasis added). This court concludes that jurists of reason would not find it debatable whether Petitioner's Motion states a valid claim of the denial of a constitutional right and also concludes that jurists of reason would not find it debatable whether this court correctly found that the Motion is barred by Petitioner's clear waiver included in the written plea agreement.

IT IS THEREFORE ORDERED THAT:

(1)  Petitioner's Application for Leave to File Supplemental Legal Authority (#7) is GRANTED.

(2)  Petitioner's Motion Under 28 U.S.C. to Vacate, Set Aside, or Correct Sentence (#1) is DENIED.

(3) A Certificate of Appealability is DENIED.

(4)  This case is terminated.

ENTERED this 17th day of July, 2013

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE